## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                        :
                                                             :        **Chapter 11**
**APPLIED EXTRUSION TECHNOLOGIES,**       :
    **INC. and**                                   :        **Case No. 04-13388 (MFW)**
                                                             :
**APPLIED EXTRUSION TECHNOLOGIES**       :
    **(CANADA), INC.**                            :        **(Jointly Administered)**
                                                             :
                  **Debtors.**       :        **Ref. Docket No. 15**

------------------------------------------------------------x

**FINAL ORDER APPROVING MOTION OF THE DEBTORS FOR ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**

This matter comes before the Court on December 21, 2004 for a final hearing (the "Final Hearing") pursuant to that certain interim order entered on December 2, 2004 (the "Interim Order") granting the relief sought in the Motion defined below on an interim basis and scheduling the Final Hearing on that certain Motion of the Debtors for Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Interim Relief, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "Motion"), dated December 1, 2004 of Applied Extrusion Technologies, Inc., a Delaware corporation ("AET") and Applied Extrusion Technologies (Canada), Inc., a Delaware

corporation ("AET Canada" and, together with AET, the "Debtors"), each as a debtor and a debtor-in-possession filed in the above captioned cases (the "Cases"):

(a) seeking the Court's authorization, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (11 U.S.C. § 101 et seq., as amended, the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to obtain from General Electric Capital Corporation, a Delaware corporation, as Agent (the "Agent" or "GE Capital") for itself and certain lenders (the "DIP Lenders"),[1] direct borrowings (the "Loans") and a subfacility for letters of credit (the "Letters of Credit"), pursuant to that certain $125,000,000 Senior Secured, Super Priority Debtor-in-Possession Credit Agreement (the "DIP Loan Agreement"),[2] by and among AET, the DIP Lenders and AET Canada, as guarantor, and such other ancillary loan documents related thereto and at any time executed in connection therewith (together with the DIP Loan Agreement, the "DIP Loan Documents"), to (i) fund the ordinary course operations of the Debtors, (ii) permit the Debtors on the basis described below, and as may be provided in this Final Order, to pay the pre-petition date obligations and other prepetition claims and obligations owed to the prepetition lenders and outstanding on December 1, 2004 (the

---

[1] Under the DIP Loan Agreement (as defined below), GE Capital shall serve as the Agent for the debtor-in-possession financing. The Agent and the Lenders, and their respective successors and assigns, are hereinafter collectively referred to as the "DIP Lenders." All references to the Agent shall mean "Agent, on behalf of the DIP Lenders." Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the DIP Loan Agreement.

[2] The DIP Loan Agreement was presented to this Court in substantially the form executed by the Debtors, the Agent and the DIP Lenders on December 2, 2004, contemporaneously with the submission of the Motion.

"Petition Date") pursuant to that certain Credit Agreement between AET (in such

capacity, the "Prepetition Borrower"), other credit parties thereto (collectively with

Prepetition Borrower, the "Prepetition Credit Parties") and certain prepetition lenders

(the "Prepetition Lenders"), dated as of October 3, 2003 (as amended from time to

time, the "Prepetition Loan Agreement") (which amounts are stipulated to be secured

by substantially all of the assets of the Debtors, subject to the terms of this Final

Order), (iii) subject to the terms of the DIP Loan Agreement and this Final Order, and

as more fully described herein, pay the fees, costs, expenses and disbursements to

professionals retained by the Debtors and any official committee subsequently

appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (the

"Official Committee") as approved by the Court, and bankruptcy related charges as

allowed by the Court and as permitted by the DIP Loan Documents, and (iv) pay such

other obligations as may be permitted by Section 1.4 of the DIP Loan Agreement or

approved by the Court.

(b) requesting, pursuant to sections 364(c) and (d) of the Bankruptcy Code,

that the financing under the DIP Loan Agreement: (i) have priority over any and all

administrative expenses, including, without limitation, the kind specified in sections

503(b) and 507(b) of the Bankruptcy Code, except for Carve-Out Expenses up to the

Carve-Out Amount (as defined below); (ii) be secured by a first priority security

interest in, and lien upon, all existing and hereafter acquired property of the Debtors

and the Debtors' estates, of whatever kind or nature, real or personal, whether

- 3 -

acquired prepetition or postpetition, including without limitation and by way of

general description only, all of the stock; all real estate interests; all interests under

leases, licenses or occupancy agreements covering personal or real property; all motor

vehicles; all accounts and accounts receivable (including without limitation, any tax

refunds and any reimbursement rights); all agreements, contracts, contract rights,

franchise rights, inter-company notes, copyrights, trademarks and patents and other

general intangibles; all deposit accounts, including all blocked accounts,

concentration accounts, depository accounts, disbursement accounts, and all other

bank accounts and all deposits therein; all instruments; all documents; all securities;

all chattel paper; all loan proceeds; all other obligations in whatever form owing to

the Debtors; all rights in merchandise or services which give rise to any of the

foregoing; all inventory, including, without limitation, raw materials, work in process,

finished goods and other personal property held for lease or sale or to be furnished

under contracts for service, or to be consumed in the Debtors' businesses; all

machinery, equipment, furniture, furnishings, fixtures and other personal property

acquired for use primarily in the Debtors' businesses; all causes of action, whether

arising in contract, tort or otherwise; and all other claims and property recovered by or

on behalf of the Debtors or Debtors' estates (exclusive of any avoidance actions (the

"Avoidance Actions") available to the bankruptcy estates of the Debtors pursuant to

sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or the

proceeds thereof), and all substitutions, accessions and proceeds of all of the

STM/286282.4

foregoing, including insurance or other proceeds (all of the foregoing, collectively, the "Collateral"), as provided for by sections 364(c) and (d) of the Bankruptcy Code, provided that the Agent's and the DIP Lenders' first priority security interest in, and lien upon, the Collateral shall be subordinate to only the valid, perfected and unavoidable senior liens (if any) defined as "Permitted Encumbrances" in the DIP Loan Agreement (the "Senior Claims") and the Carve-Out Expenses up to the Carve-Out Amount as provided for herein; and (iii) be secured by a second priority security interest in and lien upon all the Collateral otherwise encumbered by Senior Claims, all as provided by sections 364(c) and (d) of the Bankruptcy Code;

(c) seeking the Court's authorization pursuant to sections 361(1), 363(c) and 364(d)(1) of the Bankruptcy Code to provide adequate protection to the Prepetition Lenders on account of their claims under the Prepetition Loan Agreement, which claims are to be "primed" by the financing provided for herein, until such claims are paid in full pursuant and subject to the terms hereof;

(d) seeking the Court's authorization pursuant to section 363(c)(2) of the Bankruptcy Code, for the use of Cash Collateral (as such term is defined in the Bankruptcy Code) in which the Prepetition Lenders have a security interest and for the provision of adequate protection to the Prepetition Lenders with respect to the use of Cash Collateral;

- 5 -

and upon the Affidavit of David N. Terhune in Support of Voluntary Petitions and Various First Day Applications and Motions, dated December 1, 2004; and upon the entire record of the Cases;

It appearing that notice of the Final Hearing before this Court to consider the Motion and this Final Order having been given to: (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel for the Agent and the Prepetition Lenders, (iii) counsel for the ad hoc committee of holders of AET's 10 ¾ Senior Notes (the "Ad Hoc Committee" and the Official Committee, each a "Committee"), (iv) the consolidated thirty largest unsecured creditors of the Debtors, (v) counsel to Ingalls and Snyder, and (vi) any other parties requesting such notice under Rule 2002 of the Bankruptcy Rules (collectively, the "Notice Parties"); and such notice constituting good and sufficient notice of the Final Hearing and Final Order in accordance with Bankruptcy Rule 4001(b)(1), 4001(c) and 4001(d) and section 102(1) of the Bankruptcy Code, as required by sections 363(c), 363(e) and 364(c) of the Bankruptcy Code; and it further appearing upon all of the pleadings filed with the Court and all of the proceedings held before the Court, and upon the record of the interim hearing (the "Interim Hearing") held before this Court on December 2, 2004, the entry of the Interim Order, and the record of the Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED, ADJUDGED, FOUND, DECREED, AND, AS APPLICABLE, STIPULATED THAT:**[3]

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.

STM/286282.4

**1**    **Disposition**.  The Motion is granted in its entirety.  Any objections that have not previously been withdrawn are hereby overruled.  This Final Order shall immediately become fully effective upon its entry.

**2**    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code.

**3**    **Purpose and Necessity of Financing**.  The Debtors require immediate and continued financing, among other things, to finance their ongoing working capital needs.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense and are unable to obtain, within the time required by their needs, to avoid immediate and irreparable harm, other financing under sections 364(c) or (d) of the Bankruptcy Code on equal or more favorable terms than the DIP Loan Agreement and the other DIP Loan Documents.  A facility in the amount provided by the DIP Loan Agreement and the other DIP Loan Documents is unavailable to the Debtors without the Debtors granting to the Agent and the DIP Lenders, pursuant to sections 364(c) and (d) of the Bankruptcy Code, (i) priority claims, with respect to all Loans advanced post-petition, including reimbursement obligations with respect to Letters of Credit, and all other obligations of the Debtors under the DIP

- 7 -

Loan Agreement and the other DIP Loan Documents (collectively, the "Postpetition Obligations"), having priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code and the fees of the U.S. Trustee (except as otherwise expressly provided herein) and (ii) as security for all such Postpetition Obligations, a first priority senior security interest in the Collateral that is not otherwise encumbered by Senior Claims and a second priority security interest in and lien upon all Collateral otherwise encumbered by allowed Senior Claims (except as otherwise expressly provided herein).

    **4**   **Exigency**.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the Debtors' estates and creditors thereof, so that the business need for the Debtors to be operating under normal business terms may be met. The preservation and maintenance of the going concern value of the Debtors is integral to a successful reorganization of the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code.  Absent entry of this Final Order, the Debtors' estates will be immediately and irreparably harmed.

    **5**   **Good Faith Bargaining**.  Based upon the record presented to the Court, it appears that the DIP Loan Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's-length between the Debtors, the Agent and the DIP Lenders, and any Loans extended, Letters of Credit issued and other financial

- 8 -

accommodations made to the Debtors by the Agent and the DIP Lenders pursuant to the DIP Loan Agreement shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

**6    Borrowing and Guaranty Authorization**.  (a) AET is hereby immediately authorized to borrow or obtain Loans and Letters of Credit pursuant to the DIP Loan Agreement and the other DIP Loan Documents in accordance with the availability and terms and conditions under the DIP Loan Agreement; and (b) AET Canada is hereby authorized to guaranty any and all obligations of AET pursuant to the terms of the DIP Loan Agreement and the other DIP Loan Documents.  Available financing and advances under the DIP Loan Agreement will be made only to fund the Debtors' ordinary working capital and general corporate needs, in accordance with this Final Order and the DIP Loan Agreement and other amounts required or allowed to be paid pursuant to the DIP Loan Agreement.  Subject to the Investigation Rights (as described below) of the U.S. Trustee, the Official Committee, if applicable, or other parties in interest, AET is authorized to make disbursements in an amount, if any, sufficient to repay all outstanding amounts due and owing as of the Petition Date with respect to the Prepetition Loan Agreement.

**7    Stipulations**.  Without prejudice to the rights of the Official Committee, if applicable, the U.S. Trustee, or other parties with standing, in providing for the financing under the DIP Loan Agreement, each of the Debtors, the Agent and the DIP Lenders stipulate and agree that:

- 9 -

(a) The Prepetition Loan Agreement (including the guaranties executed in connection therewith) is in all respects a valid and binding agreement and liquidated obligation of each of the Prepetition Credit Parties not subject to defenses or counter-claims;

(b) the aggregate principal balance of the loans outstanding under the Prepetition Loan Agreement as of the Petition Date (excluding interest, fees, costs and legal and other expenses but including issued and undrawn letters of credit) was approximately $97,968,796.78 including $825,000 with respect to the letters of credit issued thereunder (all of the afore-detailed indebtedness, including the fees, costs and legal and other expenses, being collectively referred to as the "Prepetition Indebtedness," such term including all "Indebtedness" owing under and as defined in the Prepetition Loan Agreement);

(c) the liens and security interests granted by the Prepetition Credit Parties and held by the Prepetition Lenders under the Prepetition Loan Agreement are valid, enforceable, properly perfected and non-avoidable (the "Prepetition Liens");

(d) other than as provided in Subparagraph (f) of this Paragraph 7, the Debtors are not aware of any claim, counterclaim, setoff or defense of any kind or nature which would in any way:  (i) affect the validity, enforceability and non-voidability of the Prepetition Indebtedness owing to the Prepetition Lenders or any of the Prepetition Liens, or (ii) reduce or affect the obligations of the Prepetition Credit Parties to pay any of such Prepetition Indebtedness;

- 10 -

(e) the Debtors are not aware of any claim, counterclaim, setoff or defense of any kind or nature which would in any way: (i) affect the validity, enforceability and non-voidability of the Postpetition Obligations owing or to be owing to the Agent and the DIP Lenders under the DIP Loan Agreement and the other DIP Loan Documents or (ii) reduce or affect the obligations of the Debtors to pay any of such Postpetition Obligations;

(f) except as otherwise permitted herein, pursuant to the terms of the DIP Loan Agreement and DIP Loan Documents, the terms of this Final Order and Bankruptcy Code section 364(d), the Prepetition Liens and the Prepetition Indebtedness are each made subordinate in all respects to the liens and claims granted to the Agent and the DIP Lenders pursuant to the DIP Loan Agreement, the other DIP Loan Documents and this Final Order;

(g) in entering into the DIP Loan Documents, the Debtors have obtained all authorizations, consents and approvals necessary from, and made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents to which each Debtor is a party and none of the transactions contemplated by the DIP Loan Agreement (including, without limitation, the use of the proceeds of the Loans or other extensions of credit thereunder), will violate or result in a violation of section 7 of the Securities Exchange Act of 1934, as amended, any regulations

- 11 -

pursuant thereto, or Regulations T, U or X of the Board of Governors of the Federal Reserve System;

(h) in entering into the DIP Loan Documents, and as consideration therefor, the Debtors hereby agree that until such time as all Postpetition Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime the liens provided to the Agent and the DIP Lenders under the terms of this Final Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Bankruptcy Code;

(i) the business operations of the Debtors constitute a mutual and collective enterprise and the consolidation of all loans and other financial accommodations under the DIP Loan Agreement will enhance the aggregate borrowing powers of the Debtors and facilitate the administration of the Cases;

(j) in entering into the DIP Loan Documents, the Debtors acknowledge that the Debtors will receive substantial direct and indirect benefits by reason of the making of the Loans and other financial accommodations provided to the Debtors in the DIP Loan Agreement;

(k) the Debtors also agree not to incur any administrative expenses out of the ordinary course of business and other than professional fees whose engagements are approved by the Bankruptcy Court pursuant to 11 U.S.C. § 327 and fees payable pursuant to 28 U.S.C. § 1930 without the prior consent of the Agent and DIP Lenders, or approval by the Bankruptcy Court after notice to the Agent and a hearing; and

STM/286282.4

(l)  the Debtors agree to provide the Agent, or as may be more appropriate its counsel, such financial and other information as the Agent and DIP Lenders shall reasonably request including but not limited to the following: (i) any financial information and pleadings filed with the Bankruptcy Court; (ii) all other financial information and reports prepared by the Debtors, including any financial information required by the Bankruptcy Court or by the Operating Guidelines and Reporting Requirements of the United States Trustee's Office; and (iii) all other reports and financial information required by the DIP Loan Agreement.

The foregoing stipulations shall be binding on the Debtors and each of their successors and assigns for all purposes in these Cases, but shall not bind the Official Committee or the U.S. Trustee with respect to subparagraphs (a), (b), (c) and (d) unless and until further order of the Court after notice and a hearing or the passing of the Investigation Termination Date (as defined below) with no objection, adversary proceeding or appropriate litigation being initiated in accordance with Paragraph 8 of this Final Order.

**8    Investigation Rights**.  Notwithstanding anything herein to the contrary, until the earlier of: (i) sixty (60) days after the appointment of an Official Committee, if applicable, or (ii) the earlier of confirmation of any plan of reorganization or ninety (90) days after the Petition Date (the "Investigation Termination Date"), the Official Committee, if applicable, the U.S. Trustee, or other parties with standing, either individually or collectively, shall be entitled to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Indebtedness.  If any such party

- 13 -

determines that there may be a challenge to the Prepetition Liens or Prepetition

Indebtedness by the Investigation Termination Date, subject to any requirements of legal

standing, such party shall be permitted to file and prosecute an objection or claim related

thereto, and shall have an additional ten (10) days following the Investigation

Termination Date to file such objection or otherwise initiate an appropriate action or

adversary proceeding on behalf of the Debtors' estates setting forth the basis of any such

challenge.  If such motion is not filed on or before ten (10) days following the

Investigation Termination Date (or such other later date as extended by the written

consent of the Debtors, the Agent and the Prepetition Lenders), the stipulations contained

in subsections (a) through (l) of <u>Paragraph 7</u> of this Final Order shall be irrevocably

binding on all parties in interest without further action by any party or this Court.  Unless

the Agent, the Prepetition Lenders and the Debtors each consent in writing to an

extension, the Investigation Termination Date may not be extended unless cause therefor

is shown and only after notice to the Agent, the Prepetition Lenders and the Debtors and a

hearing on the request to extend the Investigation Termination Date is held before the

expiration of the Investigation Termination Date.

**9**    **Power to Execute Necessary Documents**.  The Debtors are expressly

authorized and empowered to enter into and deliver, among other documents, the DIP

Loan Agreement and the other attendant DIP Loan Documents in substantially the form

presented at the initial hearing to consider the Motion, except to the extent the DIP Loan

Agreement and the other attendant DIP Loan Documents are modified by this Final

Order.  The Debtors are also authorized, empowered and directed to perform all of their

obligations under the DIP Loan Agreement and the other attendant DIP Loan Documents

and such other agreements as may be required under the DIP Loan Documents to give

effect to the terms of the financing provided for in this Final Order.  The Debtors are

authorized to perform and do all acts that may be required in connection with the DIP

Loan Agreement and the other DIP Loan Documents, including, without limitation, the

payment of fees and the reimbursement of present and future reasonable costs and

expenses, including but not limited to reasonable attorneys fees and legal expenses paid

or incurred by the Agent and the DIP Lenders as provided in this Final Order, the DIP

Loan Agreement and the other DIP Loan Documents, all of which unpaid fees,

commissions, costs and expenses shall be and are included as part of the principal amount

of the Postpetition Obligations, and secured by a first priority lien and security interest in

all of the Collateral, as provided for in this Final Order, the DIP Loan Agreement and the

other DIP Loan Documents.  The DIP Loan Agreement and the other DIP Loan

Documents shall constitute valid and binding obligations of each Debtor enforceable

against such Debtor, and each of its successors and assigns, in accordance with their

terms, subject to the terms of this Final Order.  The Debtors may enter into any non-

material amendments or modifications to the DIP Loan Agreement and the other DIP

Loan Documents without the need of further notice and hearing or Order of this Court;

provided that such modifications or amendments do not materially and adversely affect

the rights of any of the Debtors, creditors, equity holders or parties-in-interest.  For

STM/286282.4

purposes of this Final Order, non-material amendments or modifications to the DIP Loan

Agreement and the DIP Loan Documents shall include, without limitation, clarifications

of procedures and reporting requirements, insertions of incomplete information,

corrections of any errors, any waivers or consents that the Agent or the DIP Lenders may

exercise at their discretion, or to the extent authorized in the DIP Loan Agreement or the

other DIP Loan Documents, and to the extent that such amendments or modifications do

not cause an increase in the maximum amount available to be borrowed pursuant to the

DIP Loan Agreement and the other DIP Loan Documents.

      **10 Lien Status and Priority** .

      (a) For all of the Postpetition Obligations, the Agent and the DIP Lenders are

hereby granted, pursuant to sections 363(e), 364(c)(1) and 364(d) of the Bankruptcy

Code, an allowed claim having administrative priority and senior secured status over

any and all other costs and administrative expenses, including, without limitation, the

kind specified in sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726

of the Bankruptcy Code and fees of the U.S. Trustee, all as more fully set forth herein

below, subject only to Senior Claims and certain unpaid fees, costs, expenses and

disbursements incurred after the Petition Date, and which have been, or may be,

awarded by the Court pursuant to sections 330 and 331 of the Bankruptcy Code in an

aggregate amount not to exceed the Carve-Out Amount (determined without regard to

fees and expenses that may be awarded and paid on an interim basis, paid pursuant to

Court-approved procedures for the payment of fees and expenses of professionals or

STM/286282.4

any prepetition retainer paid to Debtors' counsel, any other counsel to a Credit Party

filing a Chapter 11 Case or the Official Committee's counsel, if applicable, in

connection with or related to the Cases), all as more fully set forth herein below.

Further, the respective liens and security interests granted herein to the Agent and the

DIP Lenders in the Collateral or, as the case may be, the priorities accorded to the

Postpetition Obligations as set forth in this Final Order, shall be subject only to the

Senior Claims and the Carve-Out Expenses (which Carve-Out Expenses shall have an

administrative priority superior to that granted pursuant to this Final Order) up to the

Carve-Out Amount, and shall otherwise have the priority and senior secured status

afforded by sections 364(c) and 364(d)(1) of the Bankruptcy Code, as applicable.  The

"priming" of any liens and claims as provided for in this Final Order shall specifically

relate and be applicable to the liens, claims and interests of the Prepetition Lenders in

and with respect to the Collateral.  So long as no Event of Default shall have occurred

and be continuing, the Debtors shall be permitted to pay (i) administrative expenses of

the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary

course of business of the Debtors or otherwise permitted hereunder, and (ii) Court-

approved administrative expenses related to compensation and reimbursement of

expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as

the same may be due and payable, within the parameters of this Final Order and the

amounts to be advanced pursuant to the DIP Loan Agreement; provided that such

amounts are paid first from any prepetition retainer paid by the Debtors.  As used in

- 17 -

the preceding sentence, "Court-approved administrative expenses" shall include

payments made pursuant to any Court-approved procedure for monthly or other

payment of administrative expenses to which the Agent may consent or fees of the

Official Committee, if applicable, to investigate the validity, perfection and

enforceability of the Prepetition Liens and the Prepetition Indebtedness; provided,

further, that nothing contained herein shall be read to exempt those persons hereafter

receiving interim compensation payments or reimbursement of expenses pursuant to

any such Court approved procedure for monthly or other payment of administrative

expenses from otherwise applicable provisions of bankruptcy law, including, but not

limited to requirements that such compensation or reimbursement be allowed on a

final basis, and when applicable, any subsequent order of this Court requiring that

such payments be disgorged; and, provided, further, that nothing contained herein

shall be construed as consent to the allowance of any fees and expenses referred to

above and shall not affect any right of the Agent or the DIP Lenders to object to the

reasonableness of such amounts; and provided further that the Debtors shall not be

permitted hereunder to pay any fees or expenses incurred by any party, including the

Debtors or the Official Committee, if applicable, in connection with the preparation,

initiation, prosecution or defense of any claims, causes of action, adversary

proceedings or other litigation against the Agent or the DIP Lenders, including,

without limitation, challenging the amount, validity, priority or enforceability of, or

asserting any defense, counterclaim or offset to the Postpetition Obligations or the

- 18 -

security interests or liens of the Agent and the DIP Lenders in respect thereof. No

other liens or priority status, other than the Senior Claims and the Carve-Out

Expenses up to the Carve-Out Amount, having a lien or administrative priority

superior to or pari passu with that granted by this Final Order to the Agent and the

DIP Lenders, shall be granted while any portion of the Postpetition Obligations or the

Commitments under the DIP Loan Agreement remains outstanding, absent the prior

written consent of the Agent and the DIP Lenders.

(b) As used in this Final Order and the DIP Loan Agreement, Carve-Out

Expenses shall mean: unpaid fees and expenses incurred on or after the Petition Date

by professionals retained in these Cases pursuant to sections 327 or 1103 of the

Bankruptcy Code, by the Debtors or by the Official Committee, if applicable (the

"Bankruptcy Professionals"), and any statutorily mandated costs and fees of the Clerk

of the Court and the U.S. Trustee with respect to the Cases (collectively, the

"Professional Fees") up to a maximum aggregate amount outstanding and unpaid not

to exceed $2,000,000.00 (such dollar amount being referred to herein as the "Carve-

Out Amount" determined without regard to fees and expenses that may be awarded

and paid on an interim basis, paid pursuant to Court-approved procedures for the

payment of fees and expenses of professionals or any prepetition retainer paid to

Debtors' counsel, any other counsel to a Credit Party filing a Chapter 11 Case or the

Official Committee's counsel, if applicable, in connection with or related to the

Cases); provided that the Carve-Out Expenses shall not include (i) any other claims

- 19 -

that are or may be senior to or pari passu with any of the Carve-Out Expenses or any Professional Fees and expenses of a Chapter 7 trustee, or (ii) any fees and/or expenses of the Bankruptcy Professionals incurred in connection with or related to preparation for or the commencement or continuation of any suit, motion, action or other proceeding of any kind challenging the extent, validity, perfection, enforceability or priority of the Postpetition Obligations or the security interests or liens of the Agent and the DIP Lenders in respect thereof; and provided, further, that any statutorily mandated costs and fees of the Clerk of the Court and the U.S. Trustee with respect to these Cases shall be paid first out of the Carve-Out Amounts.

**11 Limitation Upon Additional Surcharges .** With the exception of the Carve-Out Expenses and except as otherwise permitted by the DIP Loan Agreement, neither the Collateral nor the Agent or the DIP Lenders shall be subject to surcharge, pursuant to Section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest, until all Postpetition Obligations are indefeasibly paid in full in cash, without the prior written consent of the Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent in this proceeding, including but not limited to funding of the Debtors' ongoing operations by the Agent and the DIP Lenders. In no event shall the Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

**12 Lien to Secure Post petition Obligations**.

(a) As security for all of the Post-Petition Obligations, the Agent and the DIP Lenders are hereby granted (effective immediately and without the necessity of the execution or filing by the Debtors of a security agreement, financing statements, trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office or Copyright Office, mortgages, landlord lien waivers, bailee waivers, consignment agreements, licensee consents or otherwise), pursuant to sections 364(c) and (d) of the Bankruptcy Code, (i) a first priority security interest in and lien upon all of the Collateral, senior in all respects to any and all present and future liens or claims, if any, that encumber the Collateral, including, without limitation: (x) any and all liens and security interests held by the Prepetition Lenders pursuant to the Prepetition Loan Agreement, (y) liens and security interests, if any, of pre-petition and post-petition landlords and bailees, and (z) liens and security interests, if any, granted in favor of any governmental authority for any liability under federal or state environmental laws or regulations or for damages arising from or costs incurred by such governmental authority in response to a release or threatened release of hazardous or toxic waste, substance or constituent, or other substance into the environment or otherwise except as provided in subparagraph (b) hereof, and subject only to the Senior Claims and the Carve-Out Expenses up to the Carve-Out Amount, and (ii) a second priority security interest in and lien upon all Collateral otherwise encumbered by allowed Senior Claims.  The security interests and liens in the Collateral granted to the Agent and the DIP Lenders hereunder include, but are not

- 21 -

STM/286282.4

limited to: (A) those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code and all Collateral in which the Prepetition Lenders have a security interest pursuant to the Prepetition Loan Agreement (which security interests are and shall be "primed" by the liens granted the Agent and the DIP Lenders pursuant to this Final Order), (B) those items and types of Collateral not governed by Article 9 of the Uniform Commercial Code, including without limitation, licenses issued by any federal or state regulatory authority and any leasehold or other real property interests; and (C) the products and proceeds of any of the foregoing.  The security interest arising hereunder shall be and hereby is a fully perfected security interest, such that no additional steps need be taken by the Agent to perfect said interest.  Pursuant to sections 363(b)(1) and 364(c)(2) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties in order for the Debtors to pledge, grant, sell, transfer or otherwise transfer any such leasehold interest or the proceeds thereof or other Collateral are and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and are and shall have no force and effect with respect to the transactions granting the Agent and the DIP Lenders a priority security interest in such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtors in favor of the Agent and the DIP Lenders in accordance with the terms of the DIP Loan Agreement.

STM/286282 4

(b) Notwithstanding anything herein to the contrary, the liens and security interests granted to the Agent and the DIP Lenders in any Collateral pursuant to this Paragraph 12 or otherwise hereunder shall be superior in all events and in all respects to the claims and liens of the Prepetition Lenders upon such Collateral, and the DIP Loan Agreement and the DIP Loan Documents shall govern the respective rights of the Agent and the DIP Lenders vis-à-vis the Prepetition Lenders with respect to said Collateral to the extent such DIP Loan Agreement and DIP Loan Documents do not conflict with this Final Order.

(c) For purposes of clarity, nothing set forth in any order entered by this Court with respect to the first day pleadings shall be deemed to affect the super-priority administrative and senior secured status granted in favor of Agent and the DIP Lenders pursuant to this Final Order, and any claims which may arise from or on account of any orders entered with respect to the first day pleadings are and shall be subordinate to the claims and interests of Agent and the DIP Lenders.

13 **Additional Perfection Measures**. The liens and priority granted to the Agent and the DIP Lenders pursuant to this Final Order and the DIP Loan Agreement shall be perfected by operation of law upon execution of this Final Order by the Court. The Agent shall not be required to enter into or to obtain landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction, or obtain consents from any licensor or similar party-in-interest, or take any

- 23 -

other action in order to validate and to perfect the security interest and lien granted to the

Agent and the DIP Lenders pursuant to this Final Order.  If the Agent, in its sole

discretion, chooses to obtain consents from any licensor or similar party-in-interest, to file

such financing statements, notices of lien or similar instruments, or to otherwise confirm

perfection of such security interests and liens: (i) all such documents shall be deemed to

have been recorded and filed as of the time and on the date of entry of this Final Order,

and (ii) no defect in any such act shall affect or impair the validity, perfection and

enforceability of the liens granted hereunder.  In lieu of obtaining such consents or filing

such financing statements, notices of lien or similar instruments, the Agent may, at its

sole discretion, choose to file a certified copy of this Final Order in any place at which

any such instruments would or could be filed, together with a description of Collateral

located within the geographic area covered by such place of filing, and such filing by the

Agent shall have the same effect as if such financing statements, notices of lien or similar

instruments had been filed or recorded at the time and on the date of entry of this Final

Order.

    **14 <u>Access to Collateral  -- No Landlord's Liens</u>**.  Each landlord waiver,

mortgagee waiver and bailee letter executed in connection with the Prepetition Loan

Agreement shall continue to govern the rights of the respective parties thereto, and such

waivers and letters shall also be equally applicable to, and shall govern the rights of such

parties vis-à-vis the Agent and the DIP Lenders in connection with, the DIP Loan

Agreement.

STM/286282.4

**15 No Responsible Person** . In making the decision to make Loans and to extend other financial accommodations to the Debtors under the DIP Loan Agreement or to collect the indebtedness and obligations of the Debtors, neither the Agent nor the DIP Lenders shall be deemed to be in control of the operations of the Debtors or to be acting as a responsible person or owner or operator with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation, and Liability Act, as amended, or any similar Federal or State statute).

**16 Enabling Clause** . The Debtors are authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay fees which may be required or necessary for their performance under the DIP Loan Agreement and the other DIP Loan Documents, including, without limitation, the execution and delivery of the DIP Loan Agreement and the other DIP Loan Documents.

**17 Automatic Stay Modified** . Subject only to the provisions of the DIP Loan Agreement, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary so as to permit the Agent and the DIP Lenders:

(a) whether or not an Event of Default has occurred, to require all cash, checks or other collections or proceeds from Collateral received by the Debtors to be deposited in accordance with Section 1.8 and Annex C of the DIP Loan Agreement, and to apply amounts deposited in any such account and other amounts paid to or

- 25 -

received by the Agent under the DIP Loan Agreement and the other DIP Loan Documents as respectively provided therein;

(b) upon the occurrence of an Event of Default and subject to three (3) business days' written notice to the Debtors, the Official Committee (if any), the Ad Hoc Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Agreement and the other DIP Loan Documents, pursuant and subject to the provisions of Section 8 of the DIP Loan Agreement without requiring prior authorization of this Court in order to exercise such rights and remedies. The Debtors and/or the applicable Committee shall have the burden of proof at any hearing on any request by the Debtors and/or such Committee to re-impose or continue the automatic stay as provided for herein; and

(c) this Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Paragraph 17 and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

18 **Successors and Assigns** . The DIP Loan Agreement and the other DIP Loan Documents and the provisions of this Final Order shall be binding upon the Agent, the DIP Lenders, the Prepetition Lenders, the Debtors and their respective successors and assigns and the same shall inure to the benefit of the Agent, the DIP Lenders, the Prepetition Lenders, the Debtors and their respective successors and assigns.

- 26 -

**19 Binding Nature of Agreement** .  Each of the DIP Loan Documents to which the Debtors are and will become a party shall constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their respective terms.  The DIP Loan Documents have been duly executed and delivered to the Agent by the Debtors. The rights, remedies, powers, privileges, liens and priorities of the Agent and the DIP Lenders provided for in this Final Order and in any other DIP Loan Document shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these Cases or in any subsequent case under the Bankruptcy Code unless the Postpetition Obligations have first been paid in full and completely satisfied.

**20 P repetition Loan Agreement Commitments Terminated**.  The Prepetition Lenders' commitment to make advances under the Prepetition Loan Agreement is hereby terminated; provided, however, that all other terms and conditions and other claims thereunder, and the liens and security interests provided for therein and in the Loan Documents as defined in the Prepetition Loan Agreement, and except as otherwise noted herein, shall remain in full force and effect, except to the extent that the security interests, liens and claims under the DIP Loan Agreement "prime" such prepetition claims and interests as provided for herein and in the DIP Loan Agreement and the DIP Loan Documents.

STM/286282.4

**21 Cash Collateral**.  The Debtors are authorized to use the prepetition collateral, including without limitation, Cash Collateral, in a manner consistent with the terms and conditions of the DIP Loan Agreement.

**22 Replacement Liens and Adequate Protection**.

(a) Until all Prepetition Indebtedness has been paid (and subject to the rights set forth in Paragraph 8), and for any diminution in value of the Prepetition Lenders' interest in prepetition collateral resulting from the Debtors' use of Cash Collateral, and to provide adequate protection, pursuant to sections 361 and 363(c)(2) of the Bankruptcy Code, of the interests of the Prepetition Lenders under the Prepetition Loan Agreement, the Prepetition Lenders are hereby granted, a valid, perfected and enforceable security interest in and replacement liens upon all of the assets of the Debtors created after the Petition Date, including, without limitation, the Collateral, and all of the Debtors' accounts, contract rights, inventory, general intangibles and such other collateral in which the Prepetition Lenders had an interest prior to the Petition Date and all improvements thereof, all books and records with respect thereto and all products and proceeds of the foregoing (exclusive of any Avoidance Actions); provided that any and all such replacement liens granted to the Prepetition Lenders by operation of this Paragraph 22 shall be subordinate in all respects to the liens, claims and security interests granted to the Agent and the DIP Lenders under the terms of the DIP Loan Documents and this Final Order.  The security interests and liens granted to the Prepetition Lenders in this Paragraph 22 shall be effective immediately and

- 28 -

without the necessity of the execution or filing by the Debtors of a security agreement, financing statements, trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office or Copyright Office, mortgages, landlord lien waivers, licensee consents or otherwise.

(b) Subject to the provisions of the DIP Loan Agreement, the DIP Loan Documents, and this Final Order until all Prepetition Indebtedness has been paid and the Investigation Termination Date has passed with no action taken or challenge made to the Prepetition Liens or the Prepetition Indebtedness in accordance with Paragraph 8 of this Final Order, and for any diminution in value of the Prepetition Lenders' interest in prepetition collateral resulting from the Debtors' use of Cash Collateral, and to provide adequate protection, pursuant to sections 361 and 363(c)(2) of the Bankruptcy Code, of the interests of the Prepetition Lenders under the Prepetition Loan Agreement, unless and until the occurrence of an Event of Default pursuant to and as defined in the DIP Loan Agreement, the Debtors are authorized and directed to pay to the Prepetition Lenders for application to the Prepetition Indebtedness all collections on accounts and sales of inventory, including current interest on the Prepetition Indebtedness as adequate protection payments to the Prepetition Lenders, all as set forth in the DIP Loan Agreement, provided, however, such payments shall be subject to disgorgement upon any successful challenge to the liens securing such Prepetition Indebtedness pursuant to the Investigation Rights set forth in Paragraph 8. All such payments are adequate protection payments and are to be afforded the full

STM/286282.4

and complete protection given to such payments under the Bankruptcy Code.  These

payments are to be made to the Prepetition Lenders because, among other things, the

Debtors will continue to use the prepetition collateral that secures the claims and

obligations owing under the Prepetition Loan Agreement.  Such payments are being

made for the purpose of, among other things, protecting the Prepetition Lenders'

claims and obligations, and collateral interest from such use and the potential

depreciation and deterioration of the collateral as a result thereof.

23 **Fees** .  The fees and expenses (including reasonable expenses of Agent's

counsel) to be paid to the Agent pursuant to that certain amended and restated

commitment letter, dated October 29, 2004, and Amended Fee Letter, dated October 20,

2004, and work fee letter, dated June 29, 2004, by and among the Debtors and the Agent

(as such letters may have been amended, modified or supplemented, the "Commitment

and Fee Letters") are reasonable, fully-earned when due, and non-refundable when paid,

and the Debtors are authorized and directed to pay to the Agent any fees and expenses

(including reasonable expenses of Agent's counsel) which are currently due pursuant to

all of the foregoing but that have not yet been paid.

24 **Subsequent Reversal or Modification** .  This Final Order is entered pursuant

to sections 361, 363 and 364 of the Bankruptcy Code.  The Agent and the DIP Lenders

are entitled to all protection afforded by sections 364(e) and 363(m) of the Bankruptcy

Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified,

vacated or stayed, such reversal, stay, modification or vacation shall not affect: (y) the

- 30 -

validity of any obligation, indebtedness or liability incurred post-petition hereunder by

any of the Debtors to the Agent and the DIP Lenders prior to the date of receipt of written

notice to the Agent of the effective date of such reversal, stay, modification or vacation;

or (z) the validity and enforceability of any lien or priority authorized or created hereby

with respect to the obligations pursuant to the DIP Loan Agreement or the other DIP Loan

Documents.  Notwithstanding any such reversal, stay, modification or vacation, any

indebtedness, obligation or liability incurred post-petition hereunder by any of the

Debtors to the Agent and the DIP Lenders prior to written notice to the Agent of the

effective date of such reversal, stay, modification or vacation shall be governed in all

respects by the original provisions of this Final Order, and the Agent and the DIP Lenders

shall be entitled to all the rights, remedies, privileges and benefits granted herein and

pursuant to the DIP Loan Agreement and the other DIP Loan Documents with respect to

all such indebtedness, obligation or liability.

    **25 No Waiver** .  This Final Order shall not be construed in any way as a waiver or

relinquishment of any rights that the Agent or the DIP Lenders may have to bring or be

heard on any matter brought before this Court.

    **26 No Dismissal; No Sale** .  The Debtors shall not request any order dismissing or

converting any of these Cases under section 1112 unless (i) each and every Obligation of

the Debtors to the Agent and the DIP Lenders shall have been paid indefeasibly in full in

cash and completely satisfied prior to the entry thereof; or (ii) the effectiveness of any

order dismissing or converting these Cases shall not occur until thirty (30) days after it is

- 31 -

entered in order to give the Agent on behalf of the DIP Lenders the opportunity to perfect its security interests and liens in the Collateral under non-bankruptcy law, including, without limitation, the filing or recording of financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, tradename or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar United States agency with respect to intellectual property) and the procurement of waivers from any landlord, mortgagee, bailee or warehouseman and consents from any licensor or similar party-in-interest. No order providing for the sale of any of the Debtors or the sale of all or substantially all of any of the Debtors' assets under section 363 or otherwise shall be entered unless either: (i) all Postpetition Obligations shall have been paid indefeasibly in full in cash and completely satisfied as part of such transaction; or (ii) the Agent expressly consents to said transaction.

**27** **Supremacy of Terms** . To the extent of any conflict between or among the express terms or provisions of any of the Prepetition Loan Documents, DIP Loan Documents, the Motion, any other order of this Court, or any other agreements and the express written terms and provisions of this Final Order, the terms and provisions of this Final Order shall govern. Notwithstanding any contrary provision within any order, document or agreement, except as expressly provided in this Final Order, the DIP Loan Agreement or the other DIP Loan Document, or as consented to by the Agent in writing, no other liens or priority status, other than the Senior Claims and the Carve-Out Expenses

- 32 -

up to the Carve-Out Amount, having a lien or administrative priority superior to or pari passu with that granted by this Final Order to the Agent and the DIP Lenders, shall be granted while any portion of the Postpetition Obligations or the Commitments under the DIP Loan Agreement remains outstanding.

**28 Adequate Notice** . The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rule 4001(c)(2) and this Court's Interim Order. The Debtors shall promptly mail copies of this Final Order to (i) the Notice Parties, (ii) Counsel to any Committee, (iii) Counsel to Ingalls and Snyder, and (iv) any other parties requesting notice under Bankruptcy Rule 2002.

SO ORDERED, this day of December 21, 2004.

Mary F. Walrath,
Chief Judge of the United States Bankruptcy
Court for the District of Delaware

[CONSENT SIGNATURES ON NEXT PAGE]

- 33 -